**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Laurel D. King, | No. CV-22-00021-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff challenges the denial of her application for benefits under the Social Security Act ("the Act") by the Commissioner of the Social Security Administration ("Commissioner"). The Court has reviewed Plaintiff's opening brief (Doc. 12), the Commissioner's answering brief (Doc. 16), and Plaintiff's reply (Doc. 17), as well as the Administrative Record (Doc. 11, "AR"), and now reverses the Administrative Law Judge's ("ALJ") decision and remands for further proceedings.

I.    Procedural History

On July 12, 2019, Plaintiff filed an application for disability and disability insurance benefits, alleging disability beginning on November 12, 2017. (AR at 15, 28, 152.) The Social Security Administration ("SSA") denied Plaintiff's application at the initial and reconsideration levels of administrative review and Plaintiff requested a hearing before an ALJ. (*Id*. at 152.) On December 7, 2020, the hearing took place. (*Id*. at 42-67.) On January 8, 2021, the ALJ issued an unfavorable decision. (*Id*. at 152-66.) However, on May 26, 2021, the Appeals Council remanded to the ALJ for further consideration. (*Id*. at

171-72.) The reason for the remand was that "numerous records about the claimant's functioning and work history, completed by the claimant and a third party, were not considered or exhibited. On remand, this evidence should be considered and exhibited." (*Id.* at 173.)

On August 30, 2021, another hearing took place. (*Id.* at 68-95.) On September 22, 2021, the ALJ issued another unfavorable decision. (*Id.* at 15-28.) The Appeals Counsel later denied review. (*Id.* at 2-4.)

II.     The Sequential Evaluation Process And Judicial Review

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. §404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

An ALJ's factual findings "shall be conclusive if supported by substantial evidence." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted). In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

III.  The ALJ's Decision

The ALJ found that Plaintiff had not engaged in substantial, gainful work activity since the alleged onset date and that Plaintiff had the following severe impairments: "lupus, Hashimoto's disease, cervical degenerative disc disease, depression/anxiety disorders, obsessive-compulsive disorder (OCD) and post-traumatic stress disorder (PTSD)." (AR at 18.)[1] Next, the ALJ concluded that Plaintiff's impairments did not meet or medically equal a listing. (*Id.* at 18-20.) Next, the ALJ calculated Plaintiff's RFC as follows:

> [T]he claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: The claimant could occasionally climb ramps, stairs, ladders, ropes and scaffolds. The claimant could frequently balance. The claimant could occasionally stoop, kneel, crouch and crawl. The claimant could frequently reach with the left upper extremity. The claimant could frequently handle, finger and feel with the left upper extremity. The claimant could have occasional exposure to extreme heat, extreme cold, unprotected heights and moving mechanical parts. The claimant could perform simple and routine tasks. The claimant could make simple work-related decisions.

(*Id.* at 20.)

As part of this RFC determination, the ALJ evaluated Plaintiff's symptom testimony, concluding that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (*Id.* at 21-24.)

---

[1] The ALJ also noted that Plaintiff had substance abuse disorder but concluded this impairment was non-severe. (AR at 18.)

- 3 -

The ALJ also evaluated opinion evidence from various medical sources, concluding as follows: (1) N. Shibuya, M.D., state agency reviewing physician ("persuasive"); (2) R. Barricks, M.D., state agency reviewing physician ("persuasive"); (3) J. Zeuss, M.D., state agency reviewing physician ("persuasive"); and (4) Robin Herr, M.Ed. ("not persuasive"). (*Id.* at 25.) Additionally, the ALJ noted that Plaintiff "was designated as disabled by the Veteran's Administration" but identified various reasons why this finding did not compel a finding of disability for SSA purposes. (*Id.*)

Based on the testimony of a vocational expert, the ALJ concluded that although Plaintiff was incapable of performing her past relevant work as a paralegal, writer/editor, writer, or salesclerk, she was capable of performing other jobs that exist in significant numbers in the national economy, including cleaner, assembler, small products, or laundry worker. (*Id.* at 26-27.) Thus, the ALJ concluded that Plaintiff is not disabled. (*Id.* at 27-28.)

IV.   Discussion

Plaintiff presents one issue on appeal: whether "[t]he ALJ's mental RFC is not supported by substantial evidence because the ALJ failed to create a logical bridge between the evidence and the mental RFC and failed to develop the record." (Doc. 12 at 1, 8-15.)

A.   **The Relevant Portion Of The ALJ's Decision**

As noted, most of the limitations in the RFC related to Plaintiff's physical impairments. (AR at 20.) The only mental limitations were that Plaintiff could "perform simple and routine tasks" and "make simple work-related decisions." (*Id.*)

B.   **The Parties' Arguments**

Plaintiff argues that "the RFC is not supported by substantial evidence because the ALJ relied wholly on the opinion of a non-examining source and failed to develop the record concerning Plaintiff's mental limitations." (Doc. 12 at 9.) Plaintiff places particular emphasis on the ALJ's failure to discuss an incident in August 2018 in which she was hospitalized for several days due to mental instability and suicidal ideations. (*Id.* at 10-11.) Plaintiff continues: "[T]he ALJ's decision is silent regarding any of this. It is unclear

whether the ALJ even considered this probative hospitalization in determining Plaintiff's RFC. This is of great concern because Plaintiff's case has once been remanded by the Appeals Council for failure to consider evidence." (*Id.* at 11.) Plaintiff also faults the ALJ for not crediting "[o]ther evidence . . . in the record that indicated Plaintiff was more limited than determined by the ALJ," including treatment notes from April 2020, May 2020, and September 2020 reflecting mental health concerns. (*Id.* at 11-12.) Plaintiff acknowledges that Dr. Zuess, the non-treating source whose opinion was credited by the ALJ, made a reference to the 2018 hospitalization episode but argues that this reference "was woefully inadequate to indicate that Dr. Zuess meaningfully considered it." (*Id.* at 12-13.) Plaintiff argues that the ALJ's determination that Dr. Zuess's opinion was consistent with the record as a whole was incorrect because his opinion is inconsistent with the hospitalization episode. (*Id.* at 13.) Finally, Plaintiff argues that the ALJ's reliance on Dr. Zuess's opinion was erroneous because the opinion was rendered before the Appeals Council's remand, and thus Dr. Zuess "did [not] consider and evaluate all of the evidence available to him at the time of his opinion." (*Id.*) According to Plaintiff, "the ALJ had a duty to further develop this case by ordering a consultative examination or recontacting Dr. Thompson for a medical source statement." (*Id.*)

The Commissioner urges the Court to affirm. (Doc. 16 at 5-15.) As an initial matter, the Commissioner notes that "Plaintiff does not substantively challenge, among other things, the ALJ's evaluation of the medical opinions in the record (including the ALJ's underlying reasoning for finding those opinions not persuasive) or the ALJ's summary of the medical evidence, nor does she challenge the ALJ's finding that her subjective testimony concerning her alleged limitations was not consistent with the medical and other evidence in the record. In addition, Plaintiff does not substantively challenge the RFC finding itself with respect to physical limitations, nor does she identify any specific functional limitation that should have been included in the RFC due to any impairment or particular piece of evidence." (*Id.* at 5-7.) Accordingly, the Commissioner argues that Plaintiff has waived any challenge with respect to those issues. (*Id.*)

Turning to Dr. Zuess's opinion, the Commissioner argues that the ALJ followed the correct procedure under the new SSA regulations when evaluating the persuasiveness of that opinion by considering "both the supportability and consistency factors." (*Id.* at 7-8.) The Commissioner also contends that Plaintiff has waived any challenge with respect to the ALJ's consideration of those factors by failing to raise such a challenge in her opening brief. (*Id.* at 8.) Alternatively, the Commissioner identifies various reasons why the ALJ's evaluation of the supportability and consistency factors in relation to Dr. Zuess was supported by substantial evidence, including that (1) although Plaintiff had a documented history of significant mental impairments, there is no evidence of cognitive issues in the record; (2) the medical records reflected that Plaintiff's mental symptoms improved during inpatient rehabilitation at Aloha House; (3) Plaintiff's provider noted that her anxiety, depression, OCD, and PTSD were all treated and controlled with medication; and (4) mental status examinations showed generally normal findings. (*Id.*) Turning to Plaintiff's argument regarding the timing of Dr. Zuess's opinion, the Commissioner argues that, under Ninth Circuit law, the opinions of non-examining medical sources cannot be discredited on this basis. (*Id.* at 8-10.) The Commissioner also cites several Ninth Circuit decisions recognizing that ALJs are expressly authorized to consider medical records when formulating an RFC, even if those records have not been reviewed by a doctor. (*Id.* at 11-13.) In a related vein, the Commissioner argues that Plaintiff's timing argument "conveniently ignores an important fact—that when evaluating the persuasiveness of Dr. Zuess's opinion, the ALJ specifically considered medical records from the April through September 2020 time frame . . . [and] explicitly found such mental status examinations during that time period to be generally normal, and thus consistent with Dr. Zuess's opinion." (*Id.* at 10-11.) Finally, the Commissioner argues that Plaintiff's duty-to-remand argument lacks merit because such a duty is triggered only when there is ambiguous evidence or an insufficient record, but here nothing was ambiguous and "[a] record does not become inadequate for review when, as in this case, the ALJ reasonably finds the only medical opinions in the record submitted by Plaintiff's providers were not persuasive,

which, again, Plaintiff has not challenged." (*Id.* at 13-14.)

In reply, Plaintiff disputes many of the Commissioner's waiver arguments and notes that her opening brief specifically challenges the ALJ's evaluation of the consistency factor as it related to Dr. Zuess. (Doc. 17 at 1-2.) As for the Commissioner's arguments regarding the propriety of relying on the opinions of non-examining sources, Plaintiff clarifies that she "does not argue that the ALJ is not allowed to utilize evidence from a state agency medical consultant, in part, in order to formulate an RFC. However, Plaintiff does argue that when the RFC is based solely on the opinion of a state agency medical consultant who did not have the benefit of reviewing the entire record, that RFC cannot be said to be supported by substantial evidence." (*Id.* at 3.) Finally, Plaintiff clarifies that she is not accusing the ALJ of playing doctor by finding Dr. Zuess's opinion persuasive; rather, her criticism is that "the ALJ played doctor by ignoring probative evidence regarding Plaintiff's mental health hospitalization, failing to reconcile that evidence with Dr. Zuess' opinion, and by developing a mental RFC without guidance from a medical professional regarding all of the evidence presented after Dr. Zuess' opinion was rendered." (*Id.* at 3-4.)

  C. **Analysis**

Although the headings in Plaintiff's briefs can be interpreted as raising only one assignment of error, which relates to the formulation of the RFC, the Court interprets Plaintiff's briefs as more broadly challenging the ALJ's decision to credit and rely upon the opinions of Dr. Zuess.

The starting point for evaluating any such challenge is to identify the applicable standard of review. In January 2017, the SSA amended the regulations concerning the evaluation of medical opinion evidence. *See Revisions to Rules Regarding Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). Because the new regulations apply to applications filed on or after March 27, 2017, they are applicable here.

The new regulations, which eliminate the previous hierarchy of medical opinions, provide in relevant part as follows:

> We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources . . . . The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability . . . and consistency . . . .

20 C.F.R. § 416.920c(a).[2] Regarding the "supportability" factor, the new regulations explain that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), . . . the more persuasive the medical opinions . . . will be." *Id.* § 404.1520c(c)(1). Regarding the "consistency" factor, the "more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id.* § 404.1520c(c)(2)

Recently, the Ninth Circuit confirmed that the "recent changes to the Social Security Administration's regulations displace our longstanding case law requiring an ALJ to provide 'specific and legitimate' reasons for rejecting an examining doctor's opinion." *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). Thus, "the former hierarchy of medical opinions—in which we assign presumptive weight based on the extent of the doctor's relationship with the claimant—no longer applies. Now, an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id.* With that said, "[e]ven under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must articulate how persuasive it finds all of the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings." *Id.* at 792 (cleaned up). Although an "ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent

---

[2] Other factors that may be considered by the ALJ in addition to supportability and consistency include the provider's relationship with the claimant, the length of the treatment relationship, the frequency of examinations, the purpose and extent of the treatment relationship, and the specialization of the provider. 20 C.F.R. § 416.920c(c).

of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records . . . the ALJ no longer needs to make specific findings regarding these relationship factors . . . ." *Id.*

Here, the ALJ provided the following analysis regarding Dr. Zuess (while misspelling the last name as Zeuss):

> Reviewing consultant, Dr. Zeuss, opined the claimant could perform simple work with simple work instructions. This opinion is persuasive, as it is consistent with the record as a whole. The claimant has a documented history of significant mental impairments. However, there is no evidence of cognitive issues in the record. Additionally, the claimant's mental symptoms improved during her inpatient rehabilitation at Aloha House. Her provider noted the claimant's anxiety, depression, OCD and PTSD were all treated and controlled with medication. Moreover, mental status examinations show generally normal findings.

(AR at 25, internal citations omitted.) On its face, this analysis was compliant with the new regulations—the ALJ expressly considered the consistency and supportability factors and explained why both enhanced the persuasive value of Dr. Zuess's opinions.

Whether the ALJ's findings as to the consistency and supportability factors are supported by substantial evidence is a closer call. As an initial matter, the Court disagrees with the Commissioner's contention that Plaintiff has waived any argument on these points—the assertion in Plaintiff's opening brief that "the ALJ found Dr. Zuess' opinion to be 'consistent with the record as a whole' . . . [but] Plaintiff contends that based on the probative evidence discussed herein, Dr. Zuess' opinion as in fact *inconsistent* with the record as a whole" (Doc. 12 at 13) is fairly characterized as a challenge to the ALJ's consistency finding.

On the merits, Plaintiff places heavy emphasis on Dr. Zuess's and the ALJ's failure to discuss the incident in August 2018 in which she was hospitalized due to a mental health crisis.[3] If this were the only alleged shortcoming, the Court would be inclined to affirm.

---

[3] The records related to that incident appear at pages 831-903 of the administrative record.

Dr. Zuess noted that he had reviewed the records from the August 2018 incident. (AR at 138.) Additionally, although Dr. Zuess did not specifically explain how he took those records into account when forming his opinions, he did explain that Plaintiff's mental health records from the period following the hospitalization incident showed improvement and stabilization: "She is being followed at the Maui Medical Group . . . where the psych Tx notes indicate a generally stable and improving clinical course, with benign MSE findings. PE psych at the 7/19 visit . . . showed NAD, cooperative manner, normal affect, good insight/judgment, and mildly pressured but appropriate speech. . . . [O]bservations at the 8/19 visit . . . showed well groomed appearance, alert/oriented status, engaged/forthcoming manner, linear thinking, euthymic mood, full range of affect, future orientation, and no gross disturbances. The depression screen was negative." (*Id.* at 140.)[4] The ALJ, in turn, explained that the medical records showing that Plaintiff's "anxiety, depression, OCD and PTSD were all treated and controlled with medication" provided one reason why the consistency factor enhanced the persuasiveness of Dr. Zuess's opinion. (*Id.* at 25.) And earlier in the opinion, the ALJ provided an extensive discussion of those medical records, explaining:

> The longitudinal mental health record fails to establish that [Plaintiff's mental] symptoms are work preclusive. The record shows the claimant has symptoms related to her severe mental impairments; however, her symptoms

---

[4] Although Plaintiff does not seem to challenge the accuracy of Dr. Zuess's characterization of these medical records, the Court notes that the characterization was accurate. In a note dated July 29, 2019, Dr. Nagasaka described Plaintiff's general appearance as "alert, in no apparent distress, cooperative" and described Plaintiff's "PSYCH" as "normal affect judgement and insight good. mildly pressured speech, but appropriate." (AR at 670.) Separately, on August 6, 2019, LCSW Danforth interviewed Plaintiff for the purpose of conducting an assessment for a homelessness housing program. (*Id.* at 787-98.) In the portion of the form describing Plaintiff's substance abuse and mental health history, LCSW Danforth wrote: "Veteran has a psychiatric history significant for OCD. She was only diagnosed last year . . . but with CBT and medication has noted a significant improvement in her symptoms. . . . Denied any current symptoms of depression/anxiety. Remains engaged in MH community care." (*Id.* at 797.) In the "Mental Status" section of the form, LCSW Danforth described Plaintiff's rapport/communication as "Engaged and forthcoming," her affect/mood as "Euthymic mood with full range affect," her thought process as "Linear," and her thought content as "Appropriate, future oriented." (*Id.*) Finally, in the "Suicide Risk Assessment" portion of the form, LCSW Danforth wrote that Plaintiff denied any suicidal ideations over the past month. (*Id.* at 797-98.)

> are generally stable on medication and abstaining from substance abuse. For example, her doctor noted that her anxiety, depression, OCD and PTSD were all treated and controlled with medication. She denied suicidal thoughts since ceasing substance abuse. There are many periods in the record where the claimant did not endorse depression, anxiety, suicidal ideations or memory loss. In July 2017 and September 2017 progress notes showed that claimant denied all these symptoms, in fact, her mood was pleasant, and there were no psychomotor agitation/retardation. In November 2017 treatment records showed normal psychological exam. She reported no sleep changes and normal mood and affect.
>
> During her inpatient substance abuse treatment at Aloha House, the claimant complained of a history of psychiatric symptoms including serious problems with depression and anxiety, suicidal thoughts. However, she reported experiencing psychological or emotional problems for only five out of thirty days. During examinations, she appeared anxious and agitated during. However, her thought process was linear, and she was oriented to time and place. She was attentive and appeared to understand all questions being asked. Her provider noted the claimant appeared to have some psychological or emotional problems or concerns but did not believe treatment was necessary. Further, the claimant's mental symptoms improved during her time at the Aloha House. Treatment notes show she improved in her ability to counter negative thoughts and feelings and use pro-social coping skills, i.e., journaling. Her outpatient Aloha records noted no depression or anxiety, indicating the claimant was improving with her treatment. In a depression screening dated March 2019, the claimant denied all symptoms with a total score of zero. Additionally, there were no cognitive issues noted and the record as whole does not indicate that she has any cognitive issues. In fact, the claimant completed two years of law school before dropping out due to financial reasons. Therefore, the undersigned finds the claimant was able to perform simple and routine tasks and make simple work-related decisions during the period at issue.

(*Id.* at 24, citations omitted.)

This summary suggests that the ALJ sought to perform a "longitudinal" survey of the medical records related to Plaintiff's mental health, which showed that Plaintiff's mental health was generally stable and controlled during the duration of the survey, and concluded that Dr. Zuess's opinion—which, one can reasonably infer, discounted the significance of the August 2018 incident in light of the evidence that Plaintiff experienced improvement and stabilization following the incident—was therefore consistent with the

entirety of the medical record. If the ALJ's longitudinal survey was indeed comprehensive, this reasoning would likely be sufficient.

The difficulty is that it is unclear whether the ALJ considered several significant medical records, which were not available to Dr. Zuess, in the course of conducting the survey. As Plaintiff notes (Doc. 12 at 6-7, 11-12), there were three separate instances in 2020 in which she reported experiencing significant mental health problems and, at times, suicidal ideations or thoughts about harming others. (AR at 1176-81 [April 6, 2022 treatment note, reflecting that Plaintiff reported that "she has been 'panicking, angry, raging,'" "is unable to physically follow through on thoughts of harming others due to limitation of back problems," "endorses low mood overall for the past couple of weeks," and endorsed "feeling hopeless about the present or future" and including the following assessment: "MH [mental health] symptoms are currently severe"]; *id.* at 1142-43 [May 28, 2020 treatment note: "Veteran shared significant stressors recently following move to Arizona . . . . Veteran reports 3 days ago having thought of suicide secondary to increased stressors"]; *id.* at 1027-28 [September 11, 2020 treatment note: "Veteran reports difficulty participating in activities currently due to difficulty with focus/concentration, depression, and physician pain. . . . Veteran stated increased thoughts of not being here, 'what is the point' . . . . Mood was 'overwhelmed, infuriated' and affect was congruent, tearful."].) However, the ALJ made no reference to any of these records in the underlying decision.

The Commissioner is correct that *Dr. Zuess's* failure to consider these records, because they were unavailable at the time he rendered his opinions, does not categorically undermine the persuasiveness of his opinions or make it impermissible for the ALJ to have relied on his opinions. *See, e.g.*, *Owen v. Saul*, 808 F. App'x 421, 423 (9th Cir. 2020) (rejecting the plaintiff's argument "that the ALJ erred in giving great weight to the non-examining state agency physicians' opinions[] because the physicians did not review any evidence beyond July 2014" and explaining that "there is always some time lapse between a consultant's report and the ALJ hearing and decision, and the Social Security regulations impose no limit on such a gap in time"); *Garner v. Saul*, 805 F. App'x 455, 458 (9th Cir.

2020) (holding that "the ALJ did not err in giving great weight to the opinion of the non-examining experts," even though those experts "submitted their reviews more than a year before the hearing date, thus failing to account for evidence post-dating their opinions," because "there is always some time lapse between a consultant's report and the ALJ hearing and decision"). Nevertheless, in light of the timing gap, it was incumbent upon the ALJ to explain why the newly available records were consistent with Dr. Zuess's opinions. *Garner*, 805 F. App'x at 458 (emphasizing that "a substantial delay would undoubtedly be significant if, in the interim, the ALJ received additional medical evidence that in her opinion may change the expert's finding" but holding that this principle did not compel reversal because the plaintiff "gives no explanation as to why the gap in time is significant and points to no subsequently obtained evidence that contradicts the experts' opinions").

It is here where the ALJ's analysis falters. The ALJ's opinion does not acknowledge, let alone discuss the significance of, the records from April 2020, May 2020, and September 2020 in which Plaintiff reported experiencing significant mental health-related distress. Notwithstanding this, the Commissioner argues that the Court can infer the ALJ considered those records (and found them consistent with Dr. Zuess's opinions) based on a passage in the ALJ's decision in which "the ALJ specifically considered medical records from the April through September 2020 time frame . . . [and] explicitly found such mental status examinations during that time period to be generally normal, and thus consistent with Dr. Zuess's opinion." (Doc. 16 at 10.)

The Court is unpersuaded. The relevant passage in the ALJ's decision reads as follows: "Moreover, mental status examinations show generally normal findings (Exs. 4F; 5F; 13F; 14F)." (AR at 25.) Exhibit 13F, in turn, is a large set of medical records from the Veterans Administration. (AR at 990-1190.) The index describes them as "Office Treatment Records, dated 03/23/2020 to 09/21/2020, from Phoenix VA." Meanwhile, Exhibit 14F is another set of medical records from the Veterans Administration. (*Id.* at 1191-1260.) The index describes them as "Office Treatment Records, dated 09/25/2020 to 10/26/2020, from Phoenix VA."

Although the April 2020, May 2020, and September 2020 medical records at issue here happen to fall within Exhibit 13F, it is unclear whether the ALJ considered them and factored them into the consistency analysis. For one thing, the ALJ did not provide a pin cite to the portion of Exhibit 13F—which is a 200-page exhibit—being cited. Separately, and more important, the ALJ offered this non-specific reference to Exhibit 13F for the purpose of showing that certain "mental status examinations" resulted in largely normal findings. But the April 2020, May 2020, and September 2020 medical records at issue here are not the results of mental status examinations intended to measure Plaintiff's cognitive functioning—they are records of medical visits in which Plaintiff reported experiencing significant mental health-related distress. *See generally Morris v. Berryhill*, 358 F. Supp. 3d 875, 882-83 (D. Ariz. 2019) ("[T]he MMSE does measure cognitive function, as the ALJ indicated. But, plaintiff's limitations flow from her schizoaffective disorder and her depressive disorder, not from any cognitive disorder. . . . Similarly, observations as to plaintiff's cognitive functioning do not contradict her reported symptoms of depression and hearing voices. The limitations that Dr. Koster assessed were not limited to cognition issues, but included limitations that flowed from plaintiff's depressive and schizoaffective disorders. The second reason the ALJ gave for rejecting Dr. Koster's opinion was not legitimate.") (citing *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014)).[5]

If the ALJ failed to consider these records, this omission calls into question the validity of the ALJ's broader determination that Dr. Zuess's medical opinions were "consistent with the record as a whole." (AR at 25.)[6] That determination seemed to be premised on the notion that Plaintiff's bouts of significant mental health-related distress were isolated (and perhaps limited to the August 2018 hospitalization incident that Dr.

---

[5] In contrast, the records appearing at Exhibits 4F and 5F include evaluations of Plaintiff's mental status and substance dependence under various formal diagnostic criteria. (AR at 580-614.)

[6] The Court fully agrees with the Commissioner's contention that "[t]o say that an ALJ cannot review the results of MRIs, x-rays, and physical examinations (such as the ones in this case) runs contrary to the regulations, as it precisely the role of the ALJ to review such evidence." (Doc. 16 at 12.) Again, the issue here is that it is unclear *whether* the ALJ reviewed the additional subset of medical records that were not available to Dr. Zuess and factored those records into the consistency and supportability findings.

- 14 -

Zuess considered). The analysis might very well have been different had the ALJ been aware these bouts recurred repeatedly in 2020. (The Court expresses no prejudgment on this issue and simply notes that it is the ALJ's role, in the first instance, to make this sort of determination.)

Finally, the error also calls into question the ALJ's RFC formulation. The ALJ specifically identified Dr. Zuess's opinions as providing the foundation for the mental limitations set forth in the RFC. (AR at 25.)

D. **Remedy**

Although Plaintiff states in the body of her brief that "this case should be remanded for further proceedings," she makes a passing and undeveloped claim in the Conclusion section that "it is respectfully requested that the ALJ's decision reversed, for a directed finding of disability and remanded for calculation of benefits." (Doc. 12 at 15.) The Commissioner disagrees, arguing that "[s]hould the Court find reversible error, the proper remedy would be to remand for further proceedings." (Doc. 16 at 15-16.) In her reply, Plaintiff only requests a remand for further proceedings: "[I]t is respectfully requested that the ALJ's decision be vacated, and this matter remanded for further proceedings, including a *de novo* hearing and new decision." (Doc. 17 at 4.)

The Court concludes, based on the above briefing sequence, that Plaintiff has abandoned any claim for a remand pursuant to the credit-as-true rule. But even if Plaintiff hadn't abandoned this claim, the Court would only remand for further proceedings.

The credit-as-true rule determines whether a case should be remanded for benefits. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). It applies if each part of a three-part test is satisfied. *Id.* First, the record must have been fully developed and further administrative proceedings would serve no useful purpose. *Id.* Next, the ALJ must have failed to provide sufficient reasons for rejecting the claimant's testimony or medical opinions. *Id.* Finally, if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled. *Id.* Even if all elements of the credit-as-true rule are met, the Court maintains "flexibility to remand for further proceedings when

the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 1021.

The ordinary remand rule applies here. The record is not fully developed, for the reasons stated above and in Plaintiff's briefs, and a remand would serve the useful purpose of, at a minimum, allowing the ALJ to clarify the seeming omissions identified above.

Accordingly,

**IT IS ORDERED** that the ALJ's decision is **reversed** and this matter is **remanded** for further proceedings.

**IT IS FURTHER ORDERED** directing the Clerk to enter judgment accordingly and close this case.

Dated this 20th day of March, 2023.

Dominic W. Lanza
United States District Judge