**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Laurel D King,<br><br>   Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>   Defendant. | No. CV-22-00021-PHX-DWL<br><br>**ORDER** |

  Pending before the Court is Plaintiff's motion for attorneys' fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 ("EAJA") (Doc. 20) and affidavit in support thereof (Doc. 21). For the following reasons, Plaintiff's motion is granted.

**BACKGROUND**

I. The Agency Proceedings

  On July 12, 2019, Plaintiff filed an application for disability and disability insurance benefits, alleging disability beginning on November 12, 2017. (AR at 15, 28, 152.) The Social Security Administration ("SSA") denied Plaintiff's application at the initial and reconsideration levels of administrative review and Plaintiff requested a hearing before an ALJ. (*Id.* at 152.) On December 7, 2020, the hearing took place. (*Id.* at 42-67.) On January 8, 2021, the ALJ issued an unfavorable decision. (*Id.* at 152-66.) However, on May 26, 2021, the Appeals Council remanded to the ALJ for further consideration. (*Id.* at 171-72.) The reason for the remand was that "numerous records about the claimant's functioning and work history, completed by the claimant and a third party, were not

considered or exhibited. On remand, this evidence should be considered and exhibited." (*Id.* at 173.)

On August 30, 2021, another hearing took place. (*Id.* at 68-95.) On September 22, 2021, the ALJ issued another unfavorable decision. (*Id.* at 15-28.) The Appeals Counsel later denied review. (*Id.* at 2-4.)

The ALJ found that Plaintiff had not engaged in substantial, gainful work activity since the alleged onset date and that Plaintiff had the following severe impairments: "lupus, Hashimoto's disease, cervical degenerative disc disease, depression/anxiety disorders, obsessive-compulsive disorder (OCD) and post-traumatic stress disorder (PTSD)." (*Id.* at 18.)[1] Next, the ALJ concluded that Plaintiff's impairments did not meet or medically equal a listing. (*Id.* at 18-20.) Next, the ALJ calculated Plaintiff's RFC as follows:

> [T]he claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: The claimant could occasionally climb ramps, stairs, ladders, ropes and scaffolds. The claimant could frequently balance. The claimant could occasionally stoop, kneel, crouch and crawl. The claimant could frequently reach with the left upper extremity. The claimant could frequently handle, finger and feel with the left upper extremity. The claimant could have occasional exposure to extreme heat, extreme cold, unprotected heights and moving mechanical parts. The claimant could perform simple and routine tasks. The claimant could make simple work-related decisions.

(*Id.* at 20.)

As part of this RFC determination, the ALJ evaluated Plaintiff's symptom testimony, concluding that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (*Id.* at 21-24.) The ALJ also evaluated opinion evidence from various medical sources, concluding as follows: (1) N. Shibuya, M.D., state agency reviewing physician ("persuasive"); (2) R. Barricks, M.D., state agency reviewing physician ("persuasive"); (3) J. Zeuss, M.D., state

---

[1] The ALJ also noted that Plaintiff had substance abuse disorder but concluded this impairment was non-severe. (AR at 18.)

agency reviewing physician ("persuasive"); and (4) Robin Herr, M.Ed. ("not persuasive"). (*Id.* at 25.) Additionally, the ALJ noted that Plaintiff "was designated as disabled by the Veteran's Administration" but identified various reasons why this finding did not compel a finding of disability for SSA purposes. (*Id.*)

Based on the testimony of a vocational expert, the ALJ concluded that although Plaintiff was incapable of performing her past relevant work as a paralegal, writer/editor, writer, or salesclerk, she was capable of performing other jobs that exist in significant numbers in the national economy, including cleaner, assembler, small products, or laundry worker. (*Id.* at 26-27.) Thus, the ALJ concluded that Plaintiff is not disabled. (*Id.* at 27-28.)

II.  The District Court Proceedings

Plaintiff presented one issue on appeal: whether "[t]he ALJ's mental RFC [was] not supported by substantial evidence because the ALJ failed to create a logical bridge between the evidence and the mental RFC and failed to develop the record." (Doc. 12 at 1, 8-15.) Plaintiff advanced various arguments in support of her contention that the RFC was not supported by substantial evidence, and Defendant argued that all of Plaintiff's arguments were meritless and/or waived. (Doc. 16 at 5-15.)

On March 20, 2023, the Court issued an order reversing the ALJ's decision and remanding for further consideration. (Doc. 18 at 16.) The Court interpreted Plaintiff's arguments as "broadly challenging the ALJ's decision to credit and rely upon the opinions of Dr. Zuess." (*Id.* at 7.) The Court determined that "[o]n its face," the ALJ's analysis "was compliant with the new regulations" because "the ALJ expressly considered the consistency and supportability factors and explained why both enhanced the persuasive value of Dr. Zuess's opinions." (*Id.* at 9.) However, "[w]hether the ALJ's findings as to the consistency and supportability factors [were] supported by substantial evidence [was] a closer call." (*Id.*) "[T]he Court disagree[d] with the Commissioner's contention that Plaintiff has waived any argument on these points." (*Id.*) On the merits, the Court was unpersuaded by Plaintiff's "heavy emphasis on Dr. Zuess's and the ALJ's failure to discuss

the incident in August 2018 in which she was hospitalized due to a mental health crisis." (*Id.* at 9-12.) However, the Court determined that it was "unclear whether the ALJ considered several significant medical records, which were not available to Dr. Zuess," and that although Dr. Zuess's inability to consider records unavailable to him did not "categorically undermine the persuasiveness of his opinions or make it impermissible for the ALJ to have relied on his opinions," "it was incumbent upon the ALJ to explain why the newly available records were consistent with Dr. Zuess's opinions." (*Id.* at 12-13 [emphasis omitted]). The ALJ's failure to do so was "where the ALJ's analysis falter[ed]," as "[t]he ALJ's opinion [did] not acknowledge, let alone discuss the significance of, the records from April 2020, May 2020, and September 2020 in which Plaintiff reported experiencing significant mental health-related distress." (*Id.* at 13.) The Court was "unpersuaded" by the Commissioner's argument that the Court could infer that the ALJ considered those records and found them consistent based on the ALJ's broad citation to Exhibit 13F (a 200-page exhibit that happened to contain the April 2020, May 2020, and September 2020 medical records at issue), as "the ALJ offered this non-specific reference to Exhibit 13F for the purpose of showing that certain 'mental status examinations' resulted in largely normal findings," but the April 2020, May 2020, and September 2020 medical records are "not the results of mental status examinations intended to measure Plaintiff's cognitive functioning—they are records of medical visits in which Plaintiff reported experiencing significant mental health-related distress." (*Id.* at 14.) "If the ALJ failed to consider these records, this omission calls into question the validity of the ALJ's broader determination that Dr. Zuess's medical opinions were 'consistent with the record as a whole'" and "also calls into question the ALJ's RFC formulation." (*Id.* at 14-15.) The Court remanded the action to "serve the useful purpose of, at a minimum, allowing the ALJ to clarify the seeming omissions identified" in the Court's order. (*Id.* at 16.)

…

…

…

III. The EAJA Motion

On June 16, 2023, Plaintiff filed the pending motion seeking EAJA fees (Doc. 20) and a supporting memorandum (Doc. 21).

On June 26, 2023, Defendant filed a response in opposition. (Doc. 22.)

On July 3, 2023, Plaintiff filed a reply. (Doc. 23.)

**DISCUSSION**

A "request for attorney's fees should not result in a second major litigation." *Pierce v. Underwood*, 487 U.S. 552, 563 (1988). In most cases, when a Plaintiff prevails in a Social Security appeal and requests EAJA fees, the parties agree that an award of fees is appropriate and the sole dispute, if any, involves the amount of fees to be awarded. Here, the Commissioner opposes an award of EAJA fees, arguing that "she was substantially justified in finding a State agency physician's prior administrative medical findings (PAMFs) persuasive and defending that finding." (Doc. 22 at 2.) The Commissioner argues, in the alternative, that Plaintiff's fee request is unreasonably high and should be reduced. (*Id.*)

I. Entitlement To Fees

   **A.   Legal Standard**

The EAJA provides that "a court shall award to a prevailing party other than the United States fees and other expenses . . . in any civil action (other than cases sounding in tort) . . . brought by or against the United States . . . , unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). "The 'position of the United States' includes both the government's litigation position and the underlying agency action giving rise to the civil action." *Meier v. Colvin*, 727 F.3d 867, 870 (9th Cir. 2013).

In the Social Security context, the underlying agency action giving rise to the civil action is the ALJ's decision. *Id.* In resolving the question of entitlement to attorneys' fees, the Court should consider "only the procedural issues on which the district court reversed" and "need not consider the Secretary's position on any other questions" or "the ultimate

issue of disability." *Flores v. Shalala*, 49 F.3d 562, 566 (9th Cir. 1995), *as amended on denial of reh'g* (June 5, 1995). "It is the government's burden to show that its position was substantially justified." *Meier*, 727 F.3d at 870.

To be "substantially justified," the government's litigation position and the underlying agency action must have a "reasonable basis both in law and fact." *Pierce*, 487 U.S. at 565; *see also Ibrahim v. DHS*, 912 F.3d 1147, 1167 (9th Cir. 2019) (en banc). A determination that an ALJ's decision "was unsupported by substantial evidence is therefore a strong indication that the 'position of the United States' . . . was not substantially justified." *Thangaraja v. Gonzales*, 428 F.3d 870, 874 (9th Cir. 2005). It is "only a decidedly unusual case in which there is substantial justification under the EAJA even though the agency's decision was reversed as lacking in reasonable, substantial and probative evidence in the record." *Id.* (internal quotation marks omitted). Because "substantial evidence" is a "deferential . . . standard of review" and refers to "such relevant evidence as a reasonable person might accept as adequate to support a conclusion," a finding that substantial evidence is lacking usually means "the government's underlying action was not substantially justified." *Meier*, 727 F.3d at 872.

However, this is only a generality, and exceptions exist. Although the Ninth Circuit "has been clear that when an agency's decision is unsupported by substantial evidence it is a strong indication that the position of the United States is not substantially justified, [it] has never stated that *every* time [a] court reverses and remands the ALJ's decision for lack of substantial evidence the claimant should be awarded attorney's fees." *Decker v. Berryhill*, 856 F.3d 659, 664 (9th Cir. 2017). Thus, "success on the merits is not dispositive of an EAJA application." *Id.* "That the government lost (on some issues) does not raise a presumption that its position was not substantially justified." *Ibrahim*, 912 F.3d at 1168.

**B.  Analysis**

As the prevailing party, Plaintiff is entitled to attorneys' fees unless the Commissioner demonstrates that the government's position "with respect to the issue on which the court based its remand" was "substantially justified." *Flores*, 49 F.3d at 566.

1  Thus, the question is whether the ALJ was substantially justified in determining that Dr.
2  Zuess's medical opinions were consistent with the record as a whole and formulating the
3  RFC.  If the ALJ's decision (the government's underlying position) was not substantially
4  justified, the Court must award fees and "need not address whether the government's
5  litigation position was justified." *Tobeler v. Colvin*, 749 F.3d 830, 832 (9th Cir. 2014).
6  *See also Ibrahim*, 912 F.3d at 1167 ("[W]e have consistently held that regardless of the
7  government's conduct in the federal court proceedings, unreasonable agency action at any
8  level entitles the litigant to EAJA fees.") (internal quotation marks omitted).

9  An ALJ is not substantially justified where she fails to support with "sufficient
10 specificity" how medical records support a consistency finding.  *Cf. Maske v. Comm'r of
11 Soc. Sec. Admin.*, 2020 WL 6562343, *3 (D. Ariz. 2020) ("The Court found, among other
12 things, that 'the ALJ did not identify with sufficient specificity how Plaintiff's medical
13 records are inconsistent with Dr. Peachey's opinion' and further found that the error was
14 'not harmless.'  The Ninth Circuit has recognized that an award of EAJA fees may be
15 premised on such an error.").  Where the ALJ "fail[s] to make the necessary connections
16 between the evidence and her conclusion, [t]he existence of 'some evidence' that could
17 support [the] ALJ's decision, which the ALJ herself failed to identify or invoke, is
18 insufficient to establish that the ALJ's decision was substantially justified." *Id.* at *4.

19 In the response brief, the Commissioner seems to challenge the Court's legal
20 conclusions.  Although the Court specified in its order that it was "unpersuaded" by the
21 Commissioner's argument that the Court could infer that the ALJ considered the April
22 2020, May 2020, and September 2020 medical records and found them consistent based
23 on the ALJ's broad citation to Exhibit 13F (Doc. 18 at 14), the Commissioner argues again
24 in her response to the fees motion that "it could reasonably be inferred that [the ALJ]
25 considered the particular records at issue in finding Dr. Zuess's PAMFs consistent with the
26 record as a whole."  (Doc. 22 at 6.)  The Commissioner then asserts that "although this
27 Court ultimately reached a different conclusion, it acknowledged facts allowing the
28 inference that the ALJ's evaluation of the PAMFs' consistency was comprehensive and

sufficient." (*Id.*) This argument is unpersuasive. If the Court had believed the facts of this case supported the inference that the ALJ's evaluation of the consistency factor was sufficient, it would not have remanded. The Court reached a different conclusion because that inference is not supportable.

The Commissioner's argument that the ALJ's decision was substantially justified is, essentially, that the Court could have gone either way on this one. But that is not what the Court meant when it said that the determination of whether the ALJ's findings as to the consistency and supportability factors were supported by substantial evidence presented a "closer call." (Doc. 18 at 9.) The Court determined that "it was incumbent upon the ALJ to explain why the newly available records were consistent with Dr. Zuess's opinions" and that the ALJ's analysis was flawed because it did "not acknowledge, let alone discuss the significance of, the records from April 2020, May 2020, and September 2020 in which Plaintiff reported experiencing significant mental health-related distress." (*Id.* at 12-13.) The deferential substantial-evidence standard directs a reviewing court to defer to the ALJ's finding even when another interpretation of the evidence is possible. That the standard under which the Court reviewed the ALJ's decision is deferential, yet the Court still found that reversal was necessary, cuts against the Commissioner's position on the issue of EAJA fees.

Although the Court agrees with the Commissioner that "the question of substantial justification in the context of the EAJA is a *distinct* question from . . . the 'substantial evidence' standard" (Doc. 22 at 2, emphasis added), this observation fails to explain *how* the standards vary, much less why that distinction compels the denial of fees here. Although the standards are distinct, "significant similarity" exists between them. *Meier*, 727 F.3d at 872. "Substantial evidence" means "such relevant evidence as a reasonable person might accept as adequate to support a conclusion," and "substantial justification" means "justified to a degree that could satisfy a reasonable person." *Id.*

Thus, for the government's position to be "substantially justified" even though the ALJ's decision lacked "substantial evidence," this would need to be "a decidedly unusual

case." *Thangaraja*, 428 F.3d at 874. Such "decidedly unusual" cases do exist. For example, in May 2017, the Ninth Circuit decided two cases in which the question was whether the government was substantially justified where the ALJ's decision was justified at the time it issued but new evidence that arose after the decision led the district court to conclude the ALJ's decision was not supported by substantial evidence. *Decker*, 856 F.3d at 665; *Gardner v. Berryhill*, 856 F.3d 652, 657 (9th Cir. 2017). In both cases, the "underlying agency action giving rise to the civil action," *i.e.,* the ALJ's decision, was substantially justified because the ALJ could not be faulted for failure to consider evidence not available at the time of the ALJ's decision.[2] The remaining question was whether the government's litigation position was also substantially justified. In both cases, the government opposed remand, but in only one of the two cases was the government substantially justified. In *Decker*, because it was unclear under the existing law whether the new evidence in that case ("two pages of blood test results, without further explanation") required remand, the government was substantially justified in opposing remand. *Decker*, 856 F.3d at 665. But in *Gardner*, where the new evidence made it plain that the ALJ's decision could not be affirmed (because the only reasons the ALJ provided for giving little weight to a particular doctor's opinion were no longer viable in light of the new evidence), the government lacked a reasonable basis for opposing remand. *Gardner*, 856 F.3d at 657.

Here, the Commissioner has not argued that any special circumstance makes this an unusual case, and the Court cannot discern any.

"Because the government's underlying position was not substantially justified," the Court "need not address whether the government's litigation position was justified." *Meier*, 727 F.3d at 872.

II. <u>Reasonableness Of The Fee Amount Requested</u>

Having determined that Plaintiff is eligible for EAJA fees, the Court must determine

---

[2] That is different from the case here, where the April 2020, May 2020, and September 2020 medical records were available to the ALJ at the time of the decision.

- 9 -

what fee is reasonable. *Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 161 (1990). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also Jean*, 496 U.S. at 161 ("[O]nce a private litigant has met the multiple conditions for eligibility for EAJA fees, the district court's task of determining what fee is reasonable is essentially the same as that described in *Hensley*."). This is "now called the 'lodestar' method" of determining the reasonableness of fees. *Costa v. Comm'r of Soc. Sec. Admin.*, 690 F.3d 1132, 1135 (9th Cir. 2012).

The reasonableness of Plaintiff's counsel's hourly rates is not in dispute.

The parties dispute whether the amount of time Plaintiff's counsel billed was reasonable. As a preliminary matter, the reasonableness of the number of hours spent is necessarily a case-specific determination, and it is improper to generalize from other cases and impose "a de facto cap" on the number of hours compensable under the EAJA. *Costa*, 690 F.3d at 1134. The Ninth Circuit has emphasized that dubbing any Social Security case "routine" would be "a misnomer" because the cases "are often highly fact-intensive and require careful review of the administrative record, including complex medical evidence," such that two cases involving the same issues might nevertheless require different amounts of work. *Id.* at 1134 n.1. Courts generally should defer to "the winning lawyer's professional judgment," and if "the amount of time requested for a particular task is too high," the Court must explain why. *Id.* at 1136.

Plaintiff originally requested $9,616.71 for EAJA attorneys' fees and $18.39 in expenses. (Doc. 20 at 1.) The Commissioner challenges various billing entries that amount to 2.2 hours total and then argues that "the duplicative work by multiple attorneys in this case warrants a 9 to 25 percent reduction of the amount for which Plaintiff moves." (Doc. 22 at 9-10.) In reply, Plaintiff asserts that the additional time (4.4 hours) that Plaintiff's counsel spent preparing the reply draft justifies adding $1,033.78 to the original request, such that the total amount awarded should be $10,650.49 in fees and $18.39 in expenses.

(Doc. 23 at 4.)

The Court has reviewed all of Plaintiff's counsel's billing entries, including the various billing entries the Commissioner identified as "purely clerical or secretarial tasks," and finds no fault with any of the billing entries. The Court rejects the Commissioner's challenge to these entries for the reasons set forth in the reply brief. (*Id.* at 2-3.)

Once again, the Court finds no fault with the fact that multiple attorneys and paralegals collaborated on this case and recognizes that legal collaboration often requires multiple attorneys to review the same documents in order to contribute meaningfully to the drafting and editing process. *Cf. Moreno v. City of Sacramento*, 534 F.3d 1106, 1115 (9th Cir. 2008) (when associates work on a case, the partner who supervises them must review the documents); *Costa*, 690 F.3d at 1136 ("[S]ometimes 'the vicissitudes of the litigation process' will require lawyers to duplicate tasks."). The Court has rejected this argument many times, as noted in the citations in the reply brief (Doc. 23 at 3-4), and will not retread this well-worn ground with any further discussion.

Having prevailed entirely in the fees motion, Plaintiff is also entitled to the fees incurred in litigating it. *Jean*, 496 U.S. at 163 n.10.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for EAJA fees (Doc. 20) is **granted** and Plaintiff is awarded $10,650.49 in fees and $18.39 in expenses.

**IT IS FURTHER ORDERED** that if the government determines that Plaintiff does not owe a debt subject to offset under the Treasury Offset Program, 31 U.SC. § 3716(c), and the government agrees to waive the requirements of the Anti-Assignment Act, 31 U.S.C. § 3727, the government shall pay the EAJA award to Plaintiff's counsel. If there is a debt owed under the Treasury Offset Program, the remaining EAJA award after offset will be paid by a check made out to Plaintiff but delivered to Plaintiff's counsel.

Dated this 4th day of December, 2023.

Dominic W. Lanza
United States District Judge